## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | |
|---|---|
| DWAYNE T. ALLEN, )<br><br>Petitioner, )<br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Respondent. ) | Case No. 10-CV-2267 |

### OPINION

On December 13, 2010, Petitioner, Dwayne T. Allen, filed a pro se Motion to Vacate, Set Aside or Correct Sentence (#1) pursuant to 28 U.S.C. § 2255. Petitioner also filed a Motion to Vacate (#3) which provided case law authority in support of his arguments. Petitioner claims that his trial counsel was ineffective because he did not file a motion to suppress a videotape of an interview with Petitioner which showed him rubbing his hands on his pants and attempting to avoid a gunshot residue test. Petitioner also claims that his appellate counsel was ineffective for failing to argue that the prosecutor's closing argument was improper. On January 12, 2011, the Government filed its Response to Petitioner's Motion under 28 U.S.C. § 2255 (#4). On February 11, 2011, Petitioner filed a Reply (#6) and his own affidavit (#5). This court has carefully considered the arguments raised by the parties and the record in this case. Following this careful and thorough review, Petitioner's Motion to Vacate, Set Aside or Correct Sentence (#1) and Motion to Vacate (#3) are DENIED.

# FACTS

March 5, 2008, Petitioner was charged by indictment in Case No. 08-CR-20013 with the offense of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). John Taylor of the Federal Defender's office was appointed to represent Petitioner. A jury trial was held on June 16-18, 2008. The trial focused on whether Petitioner possessed a gun because he stipulated the other two elements of the offense, that he had a prior felony conviction and that the gun had traveled in interstate commerce.

At trial, Jennifer Schoon testified that she was a police officer with the Kankakee City Police Department. On January 15, 2008, she responded to a 911 report of shots fired at a residence in Kankakee. When she arrived at the residence, there were eight to ten people in the area. One of the witnesses told her that Petitioner was shooting inside the house, but was gone. Zach Johnston testified that he was a police officer with the Kankakee City Police Department and also responded to the call on January 15, 2008. A female witness at the residence told him that Petitioner had shot rounds off inside the residence and Petitioner and another subject had fled to the south prior to the officers' arrival. Johnston was informed that the shooting took place in the bathroom of the residence and observed two bullet holes in the ceiling of the bathroom. Johnston received information that two subjects had been detained by agents with the Kankakee Area Metropolitan Enforcement Group (KAMEG). Johnston searched the area where the two subjects were found and located a firearm on a sand pile. The gun was admitted into evidence.

Jeffrey Martin testified that he is employed by the Kankakee City Police Department

and is assigned to KAMEG. He testified that he and another KAMEG agent, Joseph Powers, responded to the call on January 15, 2008. He said that, while traveling to the area, he saw two male subjects walking down the alleyway. He approached them and they identified themselves as Petitioner and Jammy Brown. Martin transported Petitioner and Brown back to the residence and turned Petitioner over to the Kankakee police officers on the scene. Martin testified that the weather was very cold and Petitioner and Brown were not wearing coats, hats or gloves.

Timothy Kreissler testified that he is a detective with the Kankakee Police Department. He testified that he and Detective Austin interviewed Petitioner at the Kankakee City Police Detective Bureau. The interview was videotaped and the videotape was played for the jury. Earlier, outside the presence of the jury, the prosecutor, Rhonda Coleman, informed this court that there were certain portions of the interview that she and defense counsel had discussed and, while these portions were being played, the audio would be muted. She explained that these portions contained prejudicial material and she and defense counsel had agreed to mute the audio during these portions of the videotape. This court explained this procedure to the jury before the videotape was played. The videotape showed that, during the interview, Petitioner denied ever seeing the gun or hearing the gunshots, and he accused the other witnesses of lying. The police stopped their questioning at Petitioner's request after approximately an hour. But before they returned him to jail, the officers told him that a gunshot residue test would be administered to his hands. Petitioner strenuously objected and Kreissler told him that he was not entitled to refuse the test. The

video showed Petitioner wringing his hands, rubbing them on his pants, and hiding them under his shirt. He physically resisted the officers' attempts to swab his hands and insisted he had the right to have an attorney present.

Lucinda McBride testified that a lot of people were gathered at her house on January 15, 2008. People had been playing cards and drinking alcohol. McBride testified that an incident occurred between Petitioner and Larry Smith. She heard a gunshot and saw her brother, Jammy Brown, trying to get the gun away from Petitioner. She then saw Petitioner and Brown go out the back door. Wardell Mason testified that he was present at the residence and saw Petitioner and Larry Smith fighting in the bathroom. He saw Petitioner pull out a gun and shoot it. Mason testified that Jammy Brown grabbed Petitioner and tried to take the gun away from him. Larry Smith testified that he was at McBride's residence on January 15, 2008, and he and Petitioner "got into a little fight." Smith testified that Petitioner had a gun and shot it twice. Both Mason and Smith identified the gun found by Johnston as the gun Petitioner had on January 15, 2008. Tony Williams testified that he was at the residence on January 15, 2008, and saw Petitioner with a gun in his hand. Williams stated that he saw Jammy Brown take Petitioner out the door.

Mary Wong testified that she is a forensic scientist with the Illinois State Police, Forensic Sciences Division. Wong testified that she analyzed the sample taken from Petitioner and the test was negative for gun residue. She testified that particles can be removed from hands by wiping the hands on a surface. Wong testified that she reviewed the videotape of Petitioner's interview and testified that Petitioner "was running his hands along

the side of his pants which would, could easily wipe the particles off his hands." Wong also testified that Petitioner's actions in rubbing his hands together and putting his hands in his shirt could have easily removed the particles. Wong testified that Petitioner's actions in resisting the test made it difficult to properly administer the test. Alison Rees testified that she is a fingerprint specialist. She testified that she tested the gun, the cartridges and the cartridge case for fingerprints and did not find any latent fingerprints that were suitable for identification purposes.

Jammy Brown testified that McBride is his sister and he was present at McBride's residence on January 15, 2008. Brown testified that he and Petitioner are friends. Brown testified that he has felony convictions for robbery, for driving while revoked, and for retail theft. Brown testified that he heard noises coming from the bathroom and saw Mason holding Petitioner. He grabbed Mason off of Petitioner and then heard a gunshot. Brown testified that he saw that Petitioner had a firearm and grabbed him in a bear hug to drag him out of the bathroom and keep him from shooting anybody. He pleaded with Petitioner to give him the gun and eventually Petitioner handed him the gun. Brown testified that he and Petitioner ran out of the residence and he tossed the gun in an alleyway. The police then arrived. Brown testified that the officers searched his person and found a couple bags of marijuana. Brown testified that he spoke to a police officer the next day and told the officer that he did not know anything about the gun. Brown testified that he was not truthful when he spoke to the officer that day. Brown testified that he did not want to have anything to do with the situation. He testified that it also had something to do with Petitioner being his

friend.  Brown testified that he gave a truthful statement on February 22, 2008 to Special Agent Jeff Marshall.  Brown told Marshall that he had seen a firearm and that Petitioner fired the shot and that he took the firearm and threw it.

Petitioner did not testify or present any witnesses at trial.  His counsel cross-examined most of the witnesses who testified and was able to demonstrate inconsistencies in their testimony and instances of faulty recollection.  During cross-examination of Jammy Brown, Brown admitted that he could be charged with felon in possession of a firearm.  Brown stated that he had not been charged and nobody from the Government had told him that he would be charged.

During closing argument, the prosecutor discussed Jammy Brown's testimony and stated that "[r]ight after this incident, he, again, still tried to help his friend by not giving a truthful statement to the police."  The prosecutor argued that it was not until he spoke to Special Agent Jeff Marshall that he then told the truth about what took place.  Petitioner's counsel argued that none of the five witnesses who were present at the residence on January 15, 2008, provided reliable testimony.  He focused on the fact that they had been drinking and on inconsistencies in their testimony.  When he discussed Jammy Brown's testimony, he discussed Brown's felony convictions and then stated:

> What else do we know about Jammy?  He has a reason, a good reason to come before you today and identify the shooter and he who possessed the gun as his friend, Dwayne Allen.  And what is that? Jammy told us on the stand that he was the one that threw the gun over

the cinder blocks into the sand. He admitted - - and as we know, he's a

convicted felon. He doesn't want to be sitting where Dwayne sits and

has sat for the last three days.

What does he tell the police initially? He tells them he knows

nothing about it, knows nothing about a gun. Well, that makes sense,

doesn't it? Would he tell the police he knew something about a gun and,

in fact, threw a gun over the concrete wall knowing he's a felony - -

felon, knowing he could be charged with a serious federal criminal

offense? No. He's not stupid.

Petitioner's counsel then discussed Brown's motivation to later change his statement and

implicate Petitioner to avoid being charged himself. Petitioner's counsel argued that

Brown's testimony was not credible. During her rebuttal argument, the prosecutor argued:

Jammy Brown was honest when he sat on that stand. Yes. He's

a convicted felon. He told you, "I handled that gun." He sat there with

no promises made to him, no immunity. He is not the one on trial. It is

the defendant on trial. He admitted to committing a crime while he was

on that stand. So he was totally honest with you, despite his background.

She argued that the testimony of the witnesses was consistent that it was Petitioner who was

the shooter. She argued:

[T]he only thing inconsistent is when his friend decided he didn't want

to tell the truth because he was covering for this defendant. And it was

later that he decided to tell the truth. And he told you the truth on the

stand. And he told the truth to the police when they spoke to him on

February 22nd of 2008.

Petitioner's counsel did not object to any of the arguments made by the prosecutor. The jury

found Petitioner guilty of the charged offense.

A sentencing hearing was held on September 17, 2008, and Petitioner was sentenced

to a term of 120 months in the Federal Bureau of Prisons. Petitioner filed a timely Notice of

Appeal. On appeal, his appointed counsel filed a motion to withdraw pursuant to Anders v.

California, 386 U.S. 738, 744 (1967) because he could not identify any non-frivolous

argument to pursue on appeal. The Seventh Circuit granted the motion and dismissed

Petitioner's appeal. United States v. Allen, 358 Fed. Appx. 697 (2009). In doing so, the

Seventh Circuit thoroughly discussed the potential arguments identified by Petitioner's

counsel. The court agreed with Petitioner's counsel that Petitioner could not advance Fourth,

Fifth, or Sixth Amendment challenges to the admission of evidence relating to the gunshot

residue test that was administered over Petitioner's objection and without an attorney present.

Allen, 358 Fed. Appx. 697, at *2. The court stated:

As counsel notes, any Fourth Amendment challenge to the

gunpowder residue test would be frivolous. Incident to a lawful arrest,

"it is entirely reasonable for the arresting officer to search for and seize

any evidence on the arrestee's person in order to prevent its concealment

or destruction." *Chimel v. California*, 395 U.S. 752, 763 (1969);

*Schmerber v. California*, 384 U.S. 757, 770-71 (1966) (no constitutional violation for a police officer to obtain, without a warrant or consent, a blood sample to test defendant's blood-alcohol level because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops"); *see also United States v. Bridges*, 499 F.2d 179, 184 (7th Cir. 1974) (swab test to detect presence of dynamite particles on defendant's hands did not violate Fourth Amendment because evidence was time-sensitive and hand swabbing did not intrude upon integrity of defendant's body). In this case, the delicate nature of the gunshot residue required law enforcement to administer the test quickly before the evidence could be wiped off or destroyed. *See United States v. Johnson*, 445 F.3d 793, 795-96 (5th Cir. 2006) (no Fourth Amendment violation where police performed gunshot residue test on hands of defendant, who had been arrested on weapons charge, because residue was relevant evidence that either defendant or time could have destroyed).

Furthermore, Allen would not prevail on any Fifth or Sixth Amendment arguments. Physical evidence like fingerprinting, gunshot residue, and blood samples, is not testimonial and thus does not implicate Fifth Amendment concerns regarding a defendant's right against self-incrimination. *Schmerber*, 384 U.S. at 764-65; *United States v. Hook*,

> 471 F.3d 766, 773 (7th Cir. 2006); *Bridges*, 499 F.2d at 194.  Moreover,
>
> Allen was not indicted on the § 922(g)(1) charge until almost two months
>
> after the police had administered the gunshot residue test, and thus his
>
> Sixth Amendment right to counsel had not yet attached.  *McNeil v.*
>
> *Wisconsin*, 501 U.S. 171, 175 (1991); *Watson v. Hulick*, 481 F.3d 537,
>
> 542 (7th Cir. 2007).

Allen, 358 Fed. Appx. 697, at *2.  The Seventh Circuit also concluded that any challenge to the sufficiency of the evidence would be frivolous.  The court concluded that "the evidence was more than sufficient for a reasonable jury to find Allen guilty beyond a reasonable doubt."  Allen, 358 Fed. Appx. 697, at *3.

On December 13, Petitioner filed his pro se Motions to Vacate, Set Aside or Correct Sentence (#1, #3).  Petitioner argued that his trial counsel was ineffective for not moving to suppress the videotape of his interrogation, because he had requested counsel, and that his appellate counsel was ineffective for failing to raise the issue of the prosecutor's improper closing arguments vouching for the credibility of Jammy Brown.  On January 12, 2011, the Government filed its Response (#4).  The Government argued that the Seventh Circuit already determined that Petitioner could not succeed on any Fourth Amendment claim regarding the gunshot residue test.  The Government also argued that Petitioner's appellate counsel was not ineffective for failing to raise the issue of the prosecutor's remarks during closing argument.  The Government argued that the remarks were not improper because the prosecutor did not express a personal belief, but was commenting on what the evidence

showed. The Government further argued that the remarks were invited by Petitioner's counsel's argument attacking Brown's credibility. The Government contended that this argument was frivolous and appellate counsel could not have been ineffective for failing to raise it. On February 11, 2011, Petitioner filed a Reply (#6) and his own affidavit (#5). In his affidavit, Petitioner stated that, before the gunshot residue test was taken, Detective Austin stated, "Yes you are taking the test or we are going to hurt you." Petitioner stated that the videotape would have revealed this if the prosecutor had not muted this critical part from evidence.

## ANALYSIS

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995). Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner has not included any claims which would warrant an evidentiary hearing or relief under 28 U.S.C. § 2255. This court notes that Petitioner was convicted following a jury trial at which the Government presented substantial evidence of Petitioner's guilt. See Allen, 358 Fed. Appx. 697, at *3.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

"The Sixth Amendment to the Constitution accords criminal defendants the right to effective assistance of counsel." Wyatt v. United States, 574 F.3d 455, 457 (7th Cir. 2009). To succeed on a claim of ineffective assistance, a petitioner must prove: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687-88, 693 (1984); Wyatt, 574 F.3d at 457-58. With respect to the performance prong of the two-part test, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Wyatt, 574 F.3d at 458, quoting Strickland, 466 U.S. at 689. A petitioner "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance" and the court then determines "whether such acts or omissions fall outside the wide range of professionally competent assistance." Wyatt, 574 F.3d at 458. Regarding the prejudice prong of the two-part test, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that his trial counsel was ineffective because he failed to move to suppress the videotaped interview of Petitioner. Petitioner argues that the videotape was "gained from unlawful interrogation" and was prejudicial. This court cannot agree. In allowing Petitioner's counsel to withdraw from his case on appeal, the Seventh Circuit rejected this argument. Allen, 358 Fed. Appx. 697, at *2. The Seventh Circuit concluded that Petitioner could not advance Fourth, Fifth, or Sixth Amendment challenges to the

admission of evidence relating to the gunshot residue test that was administered over Petitioner's objection and without an attorney present. Allen, 358 Fed. Appx. 697, at *2.

Petitioner contends that the interview should have ended when he requested counsel so that proceeding with the gunshot residue test violated his rights. That is not correct. The evidence shows that the police officers stopped any questioning of Petitioner after he requested counsel. The officers could, however, properly proceed with the gunshot residue test. Allen, 358 Fed. Appx. 697, at *2. Petitioner has provided this court with a sworn statement that he was threatened with harm before the gunshot residue test was taken. However, there is no question that the police officers could seize physical evidence from Petitioner despite Petitioner's objection and resistance. Allen, 358 Fed. Appx. 697, at *2. Moreover, the videotape showed that Petitioner continued to resist the test but was not harmed in any way. This court concludes that there was no basis for suppressing the videotape so his counsel could not have been ineffective for failing to move to suppress it.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner also claims that his counsel was ineffective on appeal because he failed to argue that the prosecutor's improper remarks during closing argument warranted reversal. Petitioner argues that the prosecutor improperly vouched for Jammy Brown's credibility and this "cumulative" error warranted reversal.

This court agrees with the Government that Petitioner's appellate counsel was not ineffective for failing to raise the issue of alleged improper remarks by the prosecutor. This court agrees that the prosecutor was not "vouching" for Jammy Brown's credibility, but instead was properly commenting on reasonable inferences from the evidence adduced at trial. See United States v. Davis, 15 F.3d 1393, 1400-01 (7th Cir. 1994); United States v.

Goodapple, 958 F.2d 1402, 1409-10 (7th Cir. 1992). In addition, this court agrees that the prosecutor's rebuttal argument was a proper response to Petitioner's counsel's attack on Brown's credibility. See Davis, 15 F.3d at 1401. "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996), citing Strickland, 466 U.S. at 687.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (#1) and Motion to Vacate (#3) are DENIED.

(2) This case is terminated.

ENTERED this 6th day of March, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE